Good morning, Your Honor. May it please the Court, my name is George Atwater and I'm counsel representing SSI Corporation, the appellant. The Ninth Circuit has a well-articulated standard of review for the abuse of discretion in regard to foreign loan convenience cases. A district court may abuse its discretion, one, by relying on erroneous views of the law, two, by relying on a clearly erroneous assessment of the evidence, or three, by striking an unreasonable balance of relevant factors. This comes from the Revala-Monegro case. We recognize that your review, the trial court's opinion is, oh, excuse me, I'm sorry, I forgot one thing. I'd like to reserve five minutes for you. You will respect the ruling of the court unless there is a clear abuse of discretion. We believe that the analysis here travels first from whether there is an adequate secondary form. There's no dispute in that case. Both sides have agreed that the Japanese courts would be an adequate form. The second question revolves around the deference to be paid to the plaintiff's choice of form. In this case, the plaintiff is a foreign corporation, therefore, it is due less deference than would be granted to a domestic plaintiff in his choice of form as having that as a reasonable convenient form. Therefore, we must pass to the factors the private interest and the public interest. Of the private interest, a particular note for the appellant are two, and these have to do with the relative ease of proof, access of proof, and number two, the availability of compulsory attendance of witnesses. And in particularly, we're concerned with two sub-issues, third-party discovery and the control of third-party witnesses. It is not unreasonable, since one of the private interests is the accessibility to proof and to the compulsory availability of witnesses, the very fact that there is better discovery in America or not does not necessarily mean that we're just choosing this form because of that. The complaint of appellant is simply that there were incidents of fraud, misrepresentation, and transfer, illegal transfer of money and contracts and other things like that. These are of particularly difficult proof, and much of the proof of that lies in the United States. The amended complaint is very, very clear about the fact that most of the acts that were committed, at least in part, if not entirely, were done on the soil of the United States, particularly in the State of Washington. Well, what is the real dispute here? The district court identified the real issue as whether Mr. Matsuda had authority and concluded the real witnesses or the key witnesses as to that are located in Japan. Acts may have taken place here, but that doesn't mean that's what the complaint is going to be about. I think that the court erred in two areas. Number one, many of the acts of which the SSI complained in the trial court were acts that were clearly out of any scope of authority that anyone would have, fraud, misrepresentation. Secondly, there was not in the record any clear indication that there was any specific settlement that we know of, of which we have the exact parameters before the settlement in the court, the judicial settlement in the court. All of the acts of which SSI complains occurred before that judicial settlement. There's nothing in the judicial settlement that would absolutely preclude that there was... Well, that's your position. That's our position. That's our position. So that while we agree that there may or may not be the question of whether there was the interpretation of the judicial settlement, the question of whether there was settlement before is also a matter of fact, because there's nothing written, and there's no reason that the district court could not have reviewed that as the... Here's the difficulty I have. Maybe you can pinpoint what we ought to look to. The court goes through all these factors. You've got the Masudian witnesses. Yes. They're essentially all in Japan. You have Mr. Miracle. Is that his name? Yes. He's over here, but appears to be cooperating. I mean, they lay out all the factors, and then it's not like a computer where you say one for you, one for me. No. Puts them all together and says, on balance, this case should be in Japan, whichever, you know, is a reliable forum. And then where do we kind of zero in on for the abuse of discretion? First of all, the balance was actually 100 percent on one side. There was... All of the factors went toward the defendant. Or were equal poles, and therefore, the court went to the defendant. I believe that in that case, Your Honor, we have two areas. Our complaints have to do with fraud and misrepresentation primarily. The witnesses here are not just Mr. Miracle. There are other people involved in the case who were not necessarily cooperating. There were members who... Other software companies or other people involved with other software companies, and then the banks themselves and some other subpoenas that we need to get documents. So we believe that as to those areas, that is a very strong situation that we need to address. Let me just tell you, you're down to under four minutes. Oh, okay. So you're not going to be able to... Except to you. You may want to present a little more. All right. Judge McKeon may have another question. My real question was, you have all these witnesses who are in Japan, so if you have a trial in the United States, then you've got to deal with that, correct? Well, we believe that there were not all the witnesses were in Japan. Basically, as far as we... A large number, let's say. Yes. There were some, at least Mr. Matsuda, Mr. Tanaka, about four or five that were sure. But they're under control of both parties. They could be produced in either case, in either area. But we don't have that compulsory ability to do so. Thank you, Your Honor. I do want to preserve some more time. May it please the Court. My name is Brian Grimm, and I represent the Respondents Noriyuki and Satomi Matsuda in SourceNext. Also present for the Respondents is my colleague Peter Lickman. Your Honor, this is a very unusual forum nonconvenience case for a couple of reasons. First of all, in virtually every forum nonconvenience case, there is either a U.S. plaintiff suing a foreign defendant in the plaintiff's home forum, or there is a foreign plaintiff suing a U.S. defendant in the U.S. defendant's home forum. That's not the case here. In this case, all of the parties are citizens and residents of the same foreign country, Japan, and all of the parties agree that the courts of Japan would provide an adequate forum for this case. In fact, they've been litigating against each other in the courts of Japan for a decade. So it's an unusual case for that reason. And second, all of the plaintiff's claims, which, as Mr. Atwater said during his comments, predate, factually predate the 1997 judicial settlement agreement drafted by Judge Takagasa of the Tokyo District Court, may be precluded by paragraph 17 of that agreement, which contains a mutual release of all claims by all parties to this dispute. And therefore, if the U.S. District Court were to hear this case before it could find on the plaintiff on any of its claims, it would have to rule that what is essentially a foreign judgment drafted by a foreign judge, written in Japanese and governed by Japanese law, is invalid. And that's precisely the sort of issue that, as a matter of comedy, should be left to the foreign court to decide. And for those two reasons, this is a singularly appropriate case for dismissal under the forum nonconvenience doctrine. Of course, the two-part test for dismissal is, one, is there an adequate alternative forum? And, two, does the balance of private and public interest factors weigh in favor of dismissal such that the plaintiff's choice of forum is overcome? The plaintiff in this case concedes that Japan provides an adequate forum, and therefore the only issue is the balancing of factors. As Mr. Atwater noted, all of the factors in this case weigh in favor of the Japanese forum. And specifically, there are two issues, two overarching themes that run throughout Judge Zillig's opinion, which relate to the public and private interest factors. First, as this court directed the trial court to do in the Gates-Learjet case, Judge Zillig considered not only where the witness is located, where the document is located, what law might apply, but he also considered the materiality and importance of those witnesses, those documents, and those substantive legal issues to the issues in this case. This case is not going to be about whether Nori Matsuda made transfers between these two companies. The issue in this case is whether, one, he had authority to make those transfers under either Japanese corporate law or under the first settlement agreement. That's a disputed issue, but that's the first key issue in the case. And the second issue is regardless of whether Mr. Matsuda had authority to make the transfers, did SSI waive all of its claims because they occurred before the 1997 judicial settlement agreement, which on its face contains a mutual release of all claims prior to that date? And both of these issues, the two key issues in the case, will be decided exclusively by Japanese witnesses, Japanese language documents, and Japanese substantive law. The second overarching theme that runs through Judge Zillig's opinion is the nexus of this case in Japan. It has an overwhelming connection to Japan and the Japanese courts and a minimal connection to Washington. SSI argues that there is some tangential connection to U.S. entities and third parties, and Judge Zillig considered that. He simply found that that was outweighed by the connection this case has to Japan. All Japanese parties, which have been competing against each other for 10 years in the Japanese software market, have been litigating against each other in eight different suits in the Japanese courts, and, of course, the strong interest of the Tokyo District Court in interpreting the scope and validity of its own judicially drafted settlement agreement, which has the effect, under Japanese law, of a final judgment. And, finally, SSI argues that the District Court did not afford plaintiffs' choice of forum the proper amount of deference. Of course, under the Piper Aircraft decision, a foreign plaintiff's choice of forum is entitled to less deference. And even if this Court were to adopt the sliding scale of deference approach adopted by the Second Circuit in the Irigori case, the plaintiff's reason for choosing the U.S. forum is not the type of reason which the Irigori Court held was a good reason to choose a particular forum. The plaintiff has conceded that its primary reason for choosing the U.S. forum was the availability of third-party discovery and more favorable discovery rules in the U.S. That's not the good reason for choosing a particular forum, such as a real connection of the case to the forum. And this Court does not even need to address the deference issue. As the Second Circuit itself held in Usho v. Honeywell, if the balance of interest factors weighs decisively in favor of dismissal, it doesn't matter. The appellate court does not need to inquire as to whether the proper amount of deference was given, because under any deference standard, the case should be dismissed under the balance of private and public interest factors. And this case was properly dismissed under the balance of those factors. Unless the Court has any questions, that concludes my argument. Thank you, counsel. Thank you, Your Honor. Mr. Atwater, I just wanted to clarify one thing on the deference to forum. Yes. To your client as the plaintiff, albeit a foreign plaintiff. I couldn't – I don't think I quite understood when you first started. Did you – did you indicate that you don't think we need to address that? Well, it – And we needed to go directly to the factors. If you would just clarify. Since – since we – since it is under your law and both parties have agreed that Japan would be an adequate forum, that doesn't mean it is necessarily – an adequate forum does not necessarily mean that we get the same rights or we get the same things, and that would have to be a consideration that the Court would have. But in the question of discovery, there is an element of private – of the accessibility of witnesses and access approved, which goes to discovery, basically, which you're talking about. And that is a legitimate question before the Court today, and I think that we have a right to do that. And I think that with the question about the judicial settlement, before you get to that, there's a question of whether the judicial settlement would be invalidated because of prior unknown acts, misrepresentation and fraud. And in that case, I think that the district court could make a decision regarding that. Was that a question to be resolved under U.S. law or Japanese law? It would be necessarily resolved under Japanese law, but that doesn't mean that the Court cannot consider Japanese law. They do that all the time. They work on foreign law. You just have to produce witnesses. In fact, the case regarding India that was just mentioned, they had experts considering that. And by the way, that statement is basically dictative because in that case, the Court found more that there may not have been an adequate forum in India because of the time constraints, and they actually sent it back to be put on a suspended calendar. So I don't – I think that is basically dict in that area. Stacey? Yes. Oh, I'm sorry. Well, we just never started it, so. Oh. I apologize. We believe finally that the Court really did not ask the Court to prove its – their burden of vexation and oppression, that they had in this case. It went straight to the question of whether – of the idea of the first settlement agreement. There was really no necessary proof of that. There was a belief, but that does not necessarily go to the law. And we believe also that it did not give deference to our pleadings in the case and what we had – and the importance of our points of fraud and misrepresentations. Are there any other questions, Your Honor? No. Thank you. Thank you very kindly. Thank you. I appreciate the opportunity. Thank you. The case just argued will be submitted. The next case on the calendar is Seabird v. England.
judges: Reinhardt, McKeown, Clifton